UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES C. BOTHWELL,

      Plaintiff,

v.                                              Case No. 8:04-cv-1270-T-17-MSS

RMC EWELL, INC., a Florida
Corporation, and RMC INDUSTRIES
CORP., a Delaware Corporation,

      Defendants.

_____/

## ORDER

      This cause comes before the Court on remand from the Eleventh Circuit Court of Appeals, whereby the Eleventh Circuit instructed this Court to reopen this case, reinstate the motions for summary judgment as to the Age Discrimination in Employment Act ("ADEA") retaliation claim and reconsider the decision as to the ADEA retaliation claim in light of the Supreme Court's recent decision in *Burlington N. & Santa Fe v. White*, 126 S.Ct. 2405 (2006). (Dkt. 60). A supplemental brief on the issue of retaliation has been filed by both the Plaintiff (Dkt. 63) and the Defendants (Dkt. 61). For the reasons set forth below, the prior ruling of this Court with respect to the ADEA retaliation claim is **AFFIRMED**. The following facts are accepted as true for the purpose of resolving the pending motions.

### FACTUAL BACKGROUND

      James C. Bothwell ("Plaintiff"), born on July 19, 1942, and presently sixty-five (65) years of age, began employment with RMC Ewell, Inc. ("Ewell"), a Florida corporation, on June 4, 1986, as Senior Vice-President of Sales for the Western Region. (Dkt. 34). Plaintiff was over

40 years old at all relevant times during the course of his employment. When Plaintiff was hired, Ewell was a subsidiary of RMC Industries, Corp. ("RMC Industries"), a Delaware corporation, and was a manufacturer and distributor of concrete products. (Dkt. 34). In 1994, Plaintiff became Senior Vice-President, Western Region Area Manager, and assumed responsibility for all of Ewell's business units in the Western Region, including sales, operations, and dispatch. (Dkt. 34). Plaintiff received high performance evaluations and merit bonuses from his superiors at Ewell through 1998, and salary increases through February 2002. (Dkt. 37).

In late 2002, Ewell began a process of restructuring in order to merge into a single entity with RMC South Florida Group, Inc. ("RMC South Florida"), another subsidiary of RMC Industries. (Dkt. 34). The restructuring was completed in January 2004 and the companies became RMC Florida Group, Inc. ("RMC Florida"). (Dkt. 34). During the merger process, Frank Leone, the then-President of Ewell, was critically ill, and managed Ewell with the assistance of Richard Buckelew, the then-President of RMC South Florida. (Dkt. 34).

In October 2002, Leone met with Plaintiff to discuss the restructuring and merger. (Dkt. 34). According to Plaintiff, Leone told him that he was "going to shake things up." (Dkt. 37). Plaintiff also alleges that at some unspecified point and time, Leone told him that he wanted "younger blood" in sales, and that Plaintiff was "slowing down" and "did not have the fire" he had when he was younger. (Dkt. 37). Plaintiff clarified in his deposition that the first statement about "younger blood" was not directed toward him, but was actually in reference to Plaintiff's subordinates. (Dkt. 35).

As part of the restructuring, Leone and Buckelew decided to consolidate the Eastern and Western regions of Ewell. (Dkt. 34). Soon after, also in October 2002, Leone and Buckelew assigned Plaintiff to be Senior Vice-President of Operations for the Eastern and Western

Regions. (Dkt. 34). Plaintiff's new position made him responsible for the overall management of the operations of Ewell's ready-mix concrete plants and its concrete truck drivers. (Dkt. 34).

In January 2003, and also as part of Ewell's restructuring, Buckelew consolidated Ewell's dispatch functions, formerly contained under the operations function, and reorganized them under the sales function of the company, thus removing them from Plaintiff's control. (Dkt. 34). This consolidation resulted in the creation of a new position, Dispatch Manager, to which Lee Proffitt, who was under 40 years old, was assigned. (Dkt. 34). Plaintiff alleges that these duties were stripped from him because of his age, and that Mr. Proffitt and other management undermined his authority by meeting with Plaintiff's subordinates without his knowledge. (Dkt. 37). Plaintiff alleges that these events caused him to believe that he was being discriminated against because of his age, and led him to contact his attorney out of fear that he would lose his job. (Dkt. 37).

In response to these changes, Plaintiff sent a letter from his attorney to Leone on March 19, 2003, informing Leone that he believed he was being discriminated against based on his age. (Dkt. 34). According to Plaintiff, after receiving the letter, Leone told him that he had "lost all respect" for him because of the letter. (Dkt. 37). Despite the comments, Leone made no employment decisions regarding Plaintiff after receiving the letter and succumbed to his illness and died three weeks later. (Dkt. 34). Buckelew became Leone's successor and made all subsequent decisions regarding Plaintiff's employment. (Dkt. 34).

In July 2003, over three months after the letter from Plaintiff's attorney, Buckelew consolidated the head of operations for Ewell, the position previously held by Plaintiff, with that of RMC South Florida. (Dkt. 34). This new position, Vice-President of Operations, was expanded to include the management of the paver and cement block operations. (Dkt. 34).

3

Buckelew asserts that because of the reorganization of the position, he decided to give the position to Mr. Dennis Upchurch, who happens to be younger than Plaintiff. (Dkt. 34). Upchurch had a long tenure with RMC Industries and several years of experience with the paver industry. (Dkt. 34). Plaintiff had no prior experience with the paver and cement block business. (Dkt. 34).

Plaintiff was then transferred to a "special projects" position by Buckelew. (Dkt. 34). This position had no official title, job duties, or management of subordinate personnel. (Dkt. 37). However, Plaintiff received the same salary and benefits he had received as Vice-President of Operations for the Eastern and Western Regions. (Dkt. 34). According to Buckelew, this was a temporary position designed to provide Plaintiff with employment while management evaluated whether there was a position for him in the newly restructured company. (Dkt. 34). Plaintiff did not apply for any other positions in the company, nor did he inquire as to any other positions while he was assigned to special projects. (Dkt. 34).

In August 2003, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his age. (Dkt. 37). In November 2003, Plaintiff was formally notified that because Defendants were unable to find a permanent position for him in the newly merged company, his employment was to be terminated effective January 1, 2004. (Dkt. 37).

## PROCEDURAL BACKGROUND

On June 3, 2004, Plaintiff filed this action against Ewell and RMC Industries (collectively "Defendants"), alleging discrimination and retaliation in violation of the ADEA, 29 U.S.C. § 623, *et seq.*, and the Florida Civil Rights Act of 1992, Florida Statute § 760.01, *et seq.* ("FCRA"). (Dkt. 1). Defendants answered the complaint on June 29, 2004 (Dkt. 3), and filed an amended answer to the complaint on July 6, 2004 (Dkt. 4). Defendants moved for summary

judgment on September 30, 2005 (Dkt. 33, 34), and Plaintiff filed a memorandum in opposition on October 18, 2005 (Dkt. 44). Plaintiff also filed a cross-motion for partial summary judgment on the retaliation claim on October 3, 2005 (Dkt. 37, 38), and Defendants filed a memorandum in opposition on October 18, 2005 (Dkt. 45). On June 20, 2006, this Court granted Defendants' motion for summary judgment with respect to both the discrimination and retaliation claims, while denying Plaintiff's motion for partial summary judgment regarding the retaliation claim. (Dkt. 53).

In order for a plaintiff to succeed in a retaliation claim under the ADEA, a plaintiff must show: (1) that he or she engaged in a statutorily protected expression, (2) that he or she suffered an adverse employment action, and (3) that there is some causal relation between the two events. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *see also MacLean v. City of St. Petersburg*, 194 F. Supp. 2d 1290, 1297 (M.D. Fla. 2002). With respect to the first element, this Court acknowledged that Plaintiff engaged in a statutorily protected expression at two points – first, on March 19, 2003, when he notified his superior through a letter drafted by his attorney that he felt he was being unlawfully discriminated against because of his age, and second, in August of 2003, when he filed a complaint with the EEOC. (Dkt. 53). To satisfy the second element, this Court acknowledged that Plaintiff suffered an adverse employment action on two occasions – first, when he was essentially demoted from the Vice-President of Operations position to the "special projects" position in July of 2003, and second, when he was notified of his termination in November of 2003. (Dkt. 53). However, although the first two elements were satisfied, this Court concluded that Plaintiff failed to proffer any evidence in support of the third element to establish a causal connection between the sets of events, as four months elapsed between the initial letter and the demotion and three months passed between the filing of the

complaint with the EEOC and eventual termination. (Dkt. 53). Because the time period between both protected expressions and both adverse employment actions was at a minimum three months, this Court concluded that Plaintiff had not met his burden of showing causation and, therefore, had failed to establish a prima facie case of retaliation, as a matter of law. (Dkt. 53).

After the entry of summary judgment in favor of Defendant with regard to the ADEA retaliation claim, the Supreme Court, in *Burlington*, clarified what constitutes an adverse employment action in a Title VII retaliation claim. *See Burlington*, 126 S.Ct. at 2415. The Eleventh Circuit then remanded this case, as mentioned above, instructing this Court to revisit its decision as to the ADEA retaliation claim in light of the *Burlington* opinion. (Dkt. 60).

## STANDARD OF REVIEW

On remand, this Court reviews *de novo* the prior order of the court granting summary judgment in favor of Defendants, "viewing all of the facts in the light most favorable to the non-moving party." *Cooper v. S. Co.*, 390 F.3d 695, 723 (11th Cir. 2004). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

In *Burlington*, the Supreme Court clarified what qualifies as an adverse employment action in a Title VII retaliation claim. *See Burlington*, 126 S.Ct. at 2415. "Since the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace, [where]

the language of [the ADEA] is almost [identical] with [Title VII], . . . we may properly conclude that Congress intended that the construction of [the ADEA] should follow that of [Title VII]." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979). Thus, in clarifying what qualifies as an adverse employment action in a Title VII retaliation claim, the Supreme Court also outlined the standard to be applied in an ADEA retaliation claim, as the language in both statutes is almost identical. *See id.*

On remand, this Court must determine whether any employment action *other* than Plaintiff's demotion and termination should have been classified as adverse according to the standard adopted by the Supreme Court in *Burlington*. (Dkt. 60). If any additional employment actions should have been classified as adverse, this Court must then examine the causal connection between any statutorily protected activity engaged in by Plaintiff and any of these newly classified adverse employment actions. *See Olmsted*, 141 F.3d at 1460. If a causal connection is established and a prima facie case of retaliation exists, the court must then evaluate Defendants' non-discriminatory reasons for taking such adverse employment actions, determining whether the explanations provided are merely pretext for retaliation such that the prior decision of this Court granting summary judgment in favor of Defendants with regard to the retaliation claim should be reversed. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981).

**I.     The *Burlington* Standard**

Prior to *Burlington*, a split existed among the Circuits regarding what constitutes an adverse employment action with respect to a retaliation claim under Title VII and, therefore, the ADEA. *See Burlington*, 126 S.Ct. at 2410. Whereas some Circuits, such as the Fifth, Sixth and Eighth, considered an employment action to be adverse only if it resulted in a materially adverse

7

change in the terms and conditions of employment, other Circuits, such as the Seventh, Ninth and District of Columbia, considered an employment action to be adverse where a plaintiff was able to show that a reasonable employee would have found the challenged action materially adverse. *See id.* at 2410-11. Because of these varying interpretations, the Supreme Court decided to adopt a uniform standard to be applied to all Title VII and ADEA retaliation claims across the Circuits. *See id.* at 2411.

In *Burlington*, the Supreme Court concluded that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," thereby "reject[ing] the standards applied in [those] Courts of Appeals that . . . limited actionable retaliation to so-called 'ultimate employment decisions.'" *Id.* at 2414. In conjunction with this interpretation, the Supreme Court adopted a similar standard applied by the other Courts of Appeals, including the Seventh, Ninth and District of Columbia Circuits. *See id.* at 2415. Under the adopted standard, in order for a plaintiff to prove that he or she was subjected to an adverse employment action in a retaliation claim, "[the] plaintiff must [only] show that a reasonable employee would have found the challenged action materially adverse," which means that the challenged action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See id*.

**II.      Reconciling the *Burlington* Standard with the Eleventh Circuit Standard**

"Although not cited by the Supreme Court [in *Burlington*], the Eleventh Circuit [previously] articulated substantially the same standard [for a retaliation claim] in *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1447 (11th Cir.1998)." *Reis v. Universal City Dev. Partners, Ltd.*, No. 6:05-cv-613-Orl-19JGG, 2006 WL 2054178, at *13 (M.D. Fla. July 21, 2006). "Like the Supreme Court in [*Burlington*], the Eleventh Circuit established an objective, reasonable

8

person standard," and "stressed that '[a]ny adversity must be material.'" *Id.* (summarizing the standard outlined in *Doe*). The standard adopted in *Doe* also reflected prior decisions of the Eleventh Circuit such as *Wideman*, where the Eleventh Circuit expressly "join[ed] the majority of circuits which have . . . [held] that . . . protection against retaliatory discrimination [under Title VII and the ADEA] extends to adverse actions which fall *short* of ultimate employment decisions." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (emphasis added).

Due to the overall similarity between the standards, this Court in *Reis* found "no appreciable difference in applying the standard articulated by the Supreme Court in [*Burlington*] and the standard articulated by the Eleventh Circuit in *Doe*." *See Reis,* 2006 WL 2054178, at *13. The standard set forth by the Supreme Court is essentially the same as the standard previously employed by the Eleventh Circuit and, therefore, this Court.

### III.     Evaluation of Other Potentially Adverse Employment Actions

There are six categories of potentially adverse employment actions raised in Plaintiff's complaint other than the demotion and termination: (1) reassignment of job duties and elimination of supervisory authority, (2) discriminatory and retaliatory comments by superiors verbalizing disapproval of Plaintiff's opposition to discrimination, (3) unwillingness to work with Plaintiff by certain management personnel, (4) failing to communicate with Plaintiff regarding certain business matters, (5) excluding Plaintiff from meetings and (6) denial of a salary increase. (Dkt. 37). According to the standard outlined by the Supreme Court in *Burlington* and the standard adopted and employed in previous cases by the Eleventh Circuit, Plaintiff is unable to prove a prima facie case of retaliation based upon any of the other alleged adverse employment actions.

### A.      Reassignment of Job Duties and Elimination of Supervisory Authority

The first category of adverse employment actions alleged, other than the demotion or termination, took place in January 2003, when Plaintiff's job duties relating to dispatch, sales, fleet, and quality control were "delegated to and taken over by younger individuals within the company," such as Lee Proffitt and other individuals considerably younger and with less seniority than Plaintiff. (Dkt. 37).

A decision maker must have actual knowledge that a plaintiff has engaged in statutorily protected activity at the time a challenged decision is made in order for the employment action to be classified as adverse. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Accordingly, any adverse employment action must occur *after* a statutorily protected expression, as a matter of law. *See id.* As a result, because this reassignment of job duties and elimination of supervisory authority took place *before* Plaintiff engaged in the first statutorily protected activity on March 19, 2003, it was not done in retaliation, as a matter of law, regardless of whether these changes otherwise rise to the level of adverse employment actions. *See id.*

### B.      Comments by Certain Management Personnel

Another adverse employment action alleged was Mr. Leone's reaction to the first letter from Plaintiff's attorney in which the issue of age discrimination was initially raised. (Dkt. 37). According to Plaintiff, "Mr. Leone, a decision-maker, responded that he had lost all respect for Plaintiff because of the allegations." (Dkt. 37).

In creating a uniform standard, the Supreme Court spoke in terms of material adversity in order "to separate significant from trivial harms." *Burlington*, 126 S.Ct. at 2415. "[P]etty slights, minor annoyances, and simple lack of good manners will [generally not rise to the level of an adverse employment action]." *Id.* This is consistent with prior case law of the Supreme Court,

upheld in *Burlington*, in which the Supreme Court held that isolated, negative statements generally do not rise to the level of a material adverse employment action. *See, e.g., Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998) (holding that simple teasing, offhand comments, and isolated incidents will not amount to an adverse employment action). In light of Supreme Court guidance, Mr. Leone's solitary statement, communicated in privacy to Plaintiff, is not enough to constitute an adverse employment action, as a matter of law.

### C. Unwillingness to Work with Plaintiff by Certain Management Personnel and Failure to Communicate with Plaintiff Regarding Certain Business Matters

The third and fourth categories of potentially adverse employment actions alleged other than the demotion and termination are Plaintiff's allegations that Leone, Buckelew, and other "management personnel" showed an unwillingness to work with him and failed to communicate with him regarding certain business matters. (Dkt. 37).

Under Federal Rule of Civil Procedure 56, to survive summary judgment, a plaintiff must do more than rely on the allegations of his or her Complaint and must present evidence, in the form of affidavits or deposition testimony, to support his or her position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that a plaintiff must go beyond the pleadings through affidavits, depositions, answers to interrogatories or admissions in showing that there is a genuine issue for trial). Because Plaintiff has failed to introduce any evidence into the record that either of these actually occurred in close temporal proximity after a statutorily protected activity and has failed to testify as such in any deposition or affidavit, the mere allegations are not enough to constitute materially adverse actions, as a matter of law. *See id.*

### D. Excluding Plaintiff from Meetings

Another potentially adverse employment action alleged is exclusion from meetings. (Dkt. 37). According to the evidence offered by Plaintiff, the only potentially adverse action involving exclusion from meetings relates to meetings regarding implementation of the Command Data System. (Dkt. 37).

Because the alleged exclusion from the Command Data System meetings occurred in August 2002, *before* Plaintiff engaged in the first statutorily protected activity on March 19, 2003, it was not done in retaliation, as a matter of law, regardless of whether these changes otherwise rise to the level of adverse employment actions. *See Brungart*, 231 F.3d at 799.

### E. Denial of a Salary Increase

The last potentially adverse employment action alleged in Plaintiff's complaint other than the demotion and termination is the denial of a salary increase. (Dkt. 37). Plaintiff claims that on or around June 11, 2003, less than three months after he engaged in the first statutorily protected activity, a decision was made by management that he would not be eligible for a raise in the upcoming year. (Dkt. 37). This decision was documented approximately two months before the date of his performance review. (Dkt. 37).

As stated previously, an employment action is considered adverse under the standard outlined by the Supreme Court in *Burlington* if a plaintiff is able to prove "that a reasonable employee would have found the challenged action materially adverse," which means that the challenged action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S.Ct. at 2415. Although denial of a salary increase has often been held as constituting an adverse employment action, the decision to eventually deny Plaintiff a salary increase in the current case was made in privacy by management and

documented confidentially by the human resources department. Because Plaintiff had no knowledge of the denial of a salary increase at the time the decision was made, there is no way he could have possibly been dissuaded from making or supporting a charge of discrimination as a result of such decision within the three month period after the first statutorily protected expression, as a matter of fact. *See id.*

Also, as mentioned above, any adverse employment action must occur *after* a statutorily protected expression. *See Brungart,* 231 F.3d at 799. Although Plaintiff was eventually notified of the denial of a salary increase within three months after engaging in the second statutorily protected activity, because the decision to deny Plaintiff a salary increase was made *before* Plaintiff engaged in the second statutorily protected activity, the eventual communication of this denial to Plaintiff cannot be considered an adverse employment action, as a matter of law. *See id.*

### IV.   Conclusion

In light of the fact that the standard outlined by the Supreme Court does not differ in any appreciable way from the standard employed previously by the Eleventh Circuit, as well as the fact that the other employment actions alleged by Plaintiff are not adverse, Plaintiff has failed to establish a prima facie case of retaliation under the ADEA. Accordingly, it is

**ORDERED** that the prior ruling of this Court (Dkt. 53) be **AFFIRMED** and the Clerk of Court shall enter judgment for the defendants on the retaliation claim.

**DONE and ORDERED** in Chambers in Tampa, Florida, on this 3rd day of August, 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record